259 So.2d 609 (1972)
STATE of Louisiana
v.
Nolan MELANSON.
STATE of Louisiana
v.
Gary WASHINGTON.
STATE of Louisiana
v.
Glen BARRE.
Nos. 4887-4889.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 1972.
*610 Harry J. Morel, Jr., Connolly, Nowalsky, Lambert & Labranche, New Orleans, for defendants-appellants.
Norman J. Pitre, Asst. Dist. Atty., for plaintiff-appellee.
Before REGAN, SAMUEL and LEMMON, JJ.
REGAN, Judge.
This is an appeal from a decree of the Twenty-Ninth Judicial District Court, sitting as a juvenile court, which adjudicated the defendants, Nolan Melanson, Gary Washington and Glen Barre, to be delinquent youths. Melanson and Barre were committed to the Louisiana State Correctional School at Scotlandville, Louisiana, and Washington was placed on probation under the supervision of the Louisiana Department of Rehabilitation.
From these adjudications of delinquency, all three defendants have prosecuted this appeal.
The charges against these youths result from several alleged burglaries which occurred in Carver Junior High School and in Hahnville High School, both of which are located in the Parish of St. Charles.
According to Deputy Gary Zeringue of the St. Charles Parish Sheriff's office, Nolan Melanson was arrested on February 18, 1971, and charged with the theft of a bicycle. A written statement was presented to him which advised him of his rights in conformity with the rationale of Miranda v. Arizona,[1] and he signed this waiver, thus relinquishing his right to be represented *611 by counsel and his right to refrain from incriminating himself. Thereafter, he gave a confession, which was reduced to writing by Lieutenant Zeringue and signed by him. In his confession he admitted participating in the burglaries in question and also implicated Barre and Washington. Zeringue testified that the period of the boy's interrogation was from 2:30 to 6:00 p. m., on February 18. At no time were Melanson's parents contacted, nor was any other person present during the period of Melanson's questioning.
As a direct result of Melanson's confession, Barre was arrested on February 19, 1971, and after signing a waiver of his constitutional rights, he also gave a self incriminating statement to the police. Barre's mother was present when he signed the waiver of his rights, but she did not sign the waiver for him.
A cursory reading of the record in this case discloses that the only evidence contained therein sufficient to justify an adjudication of delinquency against any of the three defendants were the two self incriminatory statements elicited from Melanson and Barre. Consequently, the significant question which is ultimately posed for our consideration emanates from the argument advanced by defendants' counsel to the effect that the confession obtained from Melanson should have been excluded from evidence for the reason that neither Melanson's parents nor an attorney were present when he signed his waiver of immunity against self incrimination. Counsel then insists that if Melanson's statement was improperly obtained, then Barre was arrested without probable cause and that his confession was inadmissible under the "Fruit of the Poisoned Tree" theory.
The United States Supreme Court, in the case of In re Gault,[2] concluded that the constitutional privilege against self incrimination is applicable to juveniles in juvenile court proceedings. However, the organ for the court made the following pronouncement with regard to waiver of this right by a juvenile:
"We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in techniquebut not in principle depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair."
The Supreme Court thus left ambiguous the actual procedures to be followed and the criteria to be applied in determining the validity of the waiver of a minor's privilege against self incrimination. In West v. United States,[3] the United States Court of Appeal for the Fifth Circuit interpreted the Gault decision to stand for the proposition that the concepts of due process of law and fundamental fairness serve as guides in the determination of whether a juvenile has waived his privilege against self incrimination, and characterized this determination as a purely factual question. Based upon several landmark cases in the field of criminal constitutional law, the Fifth Circuit listed the following factors to be considered by the Court in resolving this fact question: the age of the accused; the education of the accused; the knowledge of the accused, as to both the substance of the charge, if any has been filed, and the nature of his rights to consult with an attorney and remain silent; whether the accused is held incommunicado or allowed to consult with relatives, *612 friends, or an attorney; whether the accused was interrogated before or after formal charges had been filed; the method used in interrogation; the length of interrogations; whether the accused refused to voluntarily give statements on prior occasions; and whether the accused has repudiated an extra judicial statement at a later date. However, it is significant to note that the Court flatly rejected the contention that the defendant, because he was only 16 years old, rendered him per se incapable of waiving his rights to counsel and to remain silent.[4]
In this case, Melanson was nearing his sixteenth birthday when he was arrested and was a student at Carver Junior High School at that time. He subsequently dropped out of school, but there is no evidence in the record to indicate that this drop-out was caused by mental deficiencies. However, Lieutenant Zeringue testified that Melanson knew that he was being interrogated relative to the burglaries, and it is undisputed that the boy signed a waiver of his right to consult an attorney and to remain silent. He was held incommunicado from 2:30 to 6:00 p. m., which in view of the West decision is not an unreasonable length of time. The record is uncontradicted to the effect that Lieutenant Zeringue merely used a simple question and answer method of interrogation, and kept all questions and answers in language easily understood by a youth of Melanson's age. Moreover, it is significant to note that there was no attempt at the trial to repudiate the substance of Melancon's statement, his counsel simply insisted that it was invalid as a matter of law because he was a juvenile and did not have the benefit of his parents' presence. Under the circumstances of the case, it is clear that Nolan Melanson gave the statement freely and voluntarily after being made aware of his constitutional rights, and that the statement was not given in response to threats, coercion, or promises of reward for signing it. Therefore, the lower court did not commit error in receiving the statement into evidence or in basing its adjudication of delinquency upon Melanson's confession. This conclusion is further buttressed by the rationale emanating from the cases of Cotton v. United States,[5] and United States ex rel. Richardson v. Vitek,[6] in which the Court reasoned that juveniles were not per se precluded from waiving their right to counsel and their privilege against self incrimination.
When arrested Barre was 15 years old. To reiterate no complaint was made with respect to the admissibility per se of his confession, the defense as to him being simply that he was arrested without probable cause due to the fact that Melanson's statement was improperly obtained. This contention, of course, is without merit since we have concluded that Melanson's statement was properly obtained.
The opposite conclusion is presented by the record with respect to the defendant Gary Washington. After being implicated in the burglaries by virtue of Melanson's statement, Washington was arrested on February 19, 1971. He was advised of his rights and refused to waive these rights or to give a statement. Thereafter, in connection with the investigation of the burglary charges, he was contacted by a sheriff's deputy, and he told the officer that a radio and a small flag, apparently involved in the burglaries, were at his house. He freely and voluntarily brought both items to the sheriff's office and he was charged with being a delinquent since he was in possession of stolen goods. However, the record is completely devoid of any evidence to establish that Washington intentionally received or concealed these items, or that they were received or *613 concealed under circumstances which indicated that he knew or had good reason to believe that the items were the subject of a burglary and theft. For an adjudication of delinquency under R.S. 13:1570, subd. A(5) it must be proved that the juvenile violated a specific statute or ordinance, and every element of the crime must be proved. In re Glassberg, 230 La. 396, 88 So.2d 707 (1956). The above finding is the essence of the crime of possession of stolen goods,[7] and the absence of any evidence of Washington's criminal intent or knowledge renders his adjudication as a delinquent reversible error.
For the foregoing reasons the judgment of the lower court is affirmed insofar as it affects Nolan Melanson and Glen Barre. The lower court's adjudication of Gary Washington as a juvenile delinquent is now reversed and Gary Washington is hereby removed from the supervision of the Department of Rehabilitation.
Affirmed in part; reversed in part and rendered.
NOTES
[1] 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
[3] 399 F.2d 467 (5th Cir. 1968).
[4] The Supreme Court denied certiorari at 393 U.S. 1102, 89 S.Ct. 903, 21 L.Ed.2d 795.
[5] 409 F.2d 1049 (10th Cir. 1971), cert. den. 396 U.S. 1016, 90 S.Ct. 577, 24 L. Ed.2d 507.
[6] 395 F.2d 478 (7th Cir. 1968).
[7] See LSA-R.S. 14:69.