319 So.2d 471 (1975)
STATE of Louisiana, In the Interest of Houston HOLIFIELD, Jr., a child under seventeen years of age.
No. 5746.
Court of Appeal of Louisiana, Fourth Circuit.
September 25, 1975.
*472 Norman J. Pitre, Luling, for State-appellee.
Jerome Friedman, Metairie, for juvenile-appellant.
Before SAMUEL, REDMANN, LEMMON, GULOTTA, STOULIG, BOUTALL, SCHOTT, MORIAL, GAUTHIER and FEDOROFF, JJ.
SAMUEL, Judge.
This is an appeal from an adjudication of delinquency and an order of commitment to the Louisiana Department of Corrections.
The case was tried pursuant to R.S. 13:1570 subd. A(5), which provides for exclusive original juvenile court jurisdiction over a juvenile who violates any law or ordinance. The defendant juvenile was charged with violation of R.S. 14:62 which proscribes and defines the crime of simple burglary. Since there is no evidence in the record to indicate Holifield entered the burglarized premises, the adjudication presumably was made pursuant to R.S. 14:24, which defines one who aids and abets the commission of a crime as a principal thereto.
The evidence shows Holifield was arrested at 3 a.m. while seated on the right front seat of an automobile which belonged to another principal and which was parked in front of the burglarized premises, a grocery establishment closed for the night. A search of the vehicle revealed it contained merchandise bearing the name tag of that grocery. The primary inculpatory evidence offered by the state was the confession of Holifield. On the day of his arrest he signed a waiver of his rights at 7:20 a.m. and an inculpatory statement at approximately 7:25 a.m. He was not permitted to call his parent or to talk to an attorney prior to signing either the waiver or the inculpatory statement. The trial judge found Holifield's waiver of his rights was knowingly made and that the inculpatory statement or confession was a voluntary one.
The defense called Mrs. Ethel Holifield, the juvenile's mother. She testified he was fourteen years of age and in the ninth grade at the Helen Keller School for retarded children, a school designed to afford special education for slow learners. Her testimony, which is essentially unrefuted, is that her son functions on a third grade level and is unable to read. She also testified her son has been under the care of a psychologist at the East Jefferson Mental Health Clinic for approximately two years because of behavioral problems, which she characterized as his acting essentially like an eight year old child. When shown the confession, she stated without equivocation that many of the words contained therein were beyond the scope of her son's vocabulary. Prior to Holifield's attendance at the Helen Keller School, he attended Deckbar Special School and Kenner Junior High School, which has special education classes.
The defendant juvenile also was called to the witness stand. His testimony leaves considerable doubt regarding his capacity to understand the meaning of words used in the normal criminal process. For example, when asked to define the word "rights" the following colloquy resulted between him and his attorney:
"Q What are rights?
A Something you're supposed to do with.
*473 Q Rights are when you're supposed to do right?
A Yes sir."
When asked the meaning of the word "afford" he responded it meant "a Ford car." He could not read the word "lawyer." Moreover, he was asked to explain the meaning of the following right which the state contends he voluntarily waived:
"You have the right to talk to a lawyer for advice before we ask you any questions, to have him with you during the questioning."
He responded that this sentence meant "If you want the lawyer to defend you you got to tell him what it's about." In addition, he denied knowing the meaning of the statement "If you cannot afford a lawyer one will be appointed for you before any questioning if you wish."
While these and other portions of the juvenile's testimony may have been suspect as self serving, they nevertheless raise substantial questions regarding his competence to waive his rights and sign a confession in view of his mother's testimony and in view of the circumstances under which the waiver and confession were obtained.
A motion for new trial was filed by the defendant. It is based on evidence allegedly not available at the time of trial which was held on November 9. A medical report, also dated November 9, was attached to the motion for new trial. Counsel for defendant alleges the report was not received by him until November 14. In any event, the report purports to be made by Dr. Walter L. Prickett, the Psychiatric Director of the East Jefferson Mental Health Center. It states the defendant juvenile was mentally retarded with an I.Q. of 67. The trial court nevertheless denied the motion for new trial and entered the commitment judgment.
As the report was dated the same day as the hearing in the trial court, there is little doubt counsel for defendant did not receive the report until after the hearing had been concluded. The content of the report, if substantiated at trial, shows the juvenile as a mental retardate requiring regular, daily supervision to survive in a manner acceptable to society. The indicated prognosis is quite poor since there is no known method of treatment which could result in raising a mentally retarded person to the average level of intellectual function. If the statements contained in this report are true, the juvenile obviously did not have the capacity either to waive his rights or to sign a voluntary confession. Under all of these circumstances we are of the opinion the adjudication and order of commitment must be set aside.
Having reached this conclusion, it is unnecessary to engage in a discussion of State v. Melanson, La.App., 259 So.2d 609, which held admissible a confession by a juvenile.
For the reasons assigned, the adjudication of delinquency and order of commitment appealed from are annulled and set aside and the matter is remanded to the trial court for further proceedings in accordance with law and with the views expressed in this opinion.
Annulled and set aside; remanded.
CAUTHIER, J., concurs.
REDMANN, LEMMON and FEDOROFF, JJ., concur with written reasons.
REDMANN, Judge (concurring).
It appears to me that the majority reasoning takes for granted that this juvenile is mentally incapable of waiver and confession. If we make that factual determination, then I agree we can postpone our consideration of overruling Melanson and still accomplish justice in this particular case. But I cannot say that we expressly make that factual determination. I would therefore clarify our decree to instruct expressly that the confession not be admitted *474 into evidence upon new trial, either on the factual grounds (as indicated by the majority) of mental incapacity or on the legal grounds (as set forth by Judge Fedoroff) of legal incapacity.
LEMMON, Judge (concurring).
After the original hearing before a three-judge panel, I subscribed to the view expressed in Judge Federoff's concurring opinion and proposed to overrule State v. Melanson, supra. I am now convinced that this position is wrong.
I do agree that in terms of logical priority, a minor child's property rights are less important than his individual civil rights. This comparison, however, cannot be applied in the abstract.
Perhaps the minor who makes a credit purchase of an automobile, for example, and later defaults on the payments should be subject to suit and the fact of his minority admissible merely as one of the considerations in determining his capacity to contract. If this were the law, sellers and lenders would not deal with persons in a certain age bracket, fearing that collection suits arising from most such transactions would be contested on the basis of contractual incapacity. Thus, the absoluteness of the minor's contractual incapacity established by C.C. art. 1785 is designed not only to protect minors, but also for the advantage of merchants and lenders.
Entirely different considerations exist as to the capacity of a juvenile to waive his right against self-incrimination. If one begins with the proposition that voluntary confessions are extremely important in the overall process of protecting society from criminals, then competing interests arise. On one hand, the ultimate goal of the criminal justice system is to protect society by separating criminals (including juveniles) from the other members of society; on the other hand, the privilege against self-incrimination and the zealous protection accorded the waiver of the privilege are designed to assure fairness in criminal proceedings to persons (including juveniles) accused of crime.
Fairness to juveniles, nevertheless, can be assured without absolutely excluding their confessions. In determining the voluntariness of an inculpatory statement given by a juvenile without the opportunity of consultation with his parent or other person, the court must carefully scrutinize all of the circumstances surrounding the confession. Nevertheless, a juvenile's confession should not be absolutely excluded simply because the juvenile was one day short of the statutory age. Such an absolute rule, automatically releasing the juvenile (who may be a violent criminal) back into society in the absence of other sufficient evidence, is not fair to his next victim. The "totality of the circumstances", including the fact of age, should be considered in determining the voluntariness and validity of every confession.[1]
In the present case, since I agree that the application for rehearing warranted reopening the case, I concur in a remand for that purpose.
GAUTHIER, Judge (concurring).
I respectfully concur.
FEDOROFF, Judge (concurring).
I would have the Court take this opportunity to overrule State v. Melanson, 259 So.2d 609 (La.App. 4th Cir., 1972), which held admissible a juvenile's confession obtained without the benefit of parental or other counseled advice. West v. United States, 399 F.2d 467 (5th Cir. 1968), cited as authority for this Court's holding, was a *475 Federal juvenile delinquency hearing arising in Florida. It held, as did Melanson, that juveniles have the legal capacity to waive their right to counsel and to remain silent, reducing to an issue of fact the question of whether the waivers were intelligently made. Melanson did not consider, other than by necessary implication, whether Louisiana ought to allow a minor to waive such rights without the benefit of responsible advice. I believe our courts should not permit such an uncounseled waiver.
As observed in Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), despite the paternalistic language of delinquency statutes, proceedings thereunder are essentially criminal in nature and may result in the deprivation of liberty and confinement in an institution. Recognizing this risk to freedom in delinquency hearings, the Supreme Court in Gault extended to juvenile proceedings the basic protections of the Fourteenth Amendment, theretofore guaranteed only in adult prosecutions. Included in these of course are the rights to counsel and to remain silent.
Adults may intellingently waive these rights. They may also contract, sell, mortgage, donate, and settle claims as they wish, even to their detriment. Minors may not. Civil Code art. 1785 interdicts the minor from binding himself in contract without parental consent. Code of Civil Procedure article 4501 prescribes the formal manner in which a minor's property may be sold or mortgaged or his claim for damages settled, requiring at least parental, and often judicial, approval.
While these limitations are designed to protect only the minor's property, they evidence a public policy to protect minors from the consequences of their immaturity. Surely this public policy should be no less concerned with the minor's very liberty. If we recognize that the right to counsel, and to remain silent are still guaranteed by the Fourteenth Amendment, their current questionable popularity notwithstanding, I cannot fathom how a minor, who lacks the capacity to sell, mortgage, donate or release (who could not even contract with the lawyer whose services he waives) can be said to possess the capacity to waive constitutional privileges and lose his freedom as a consequence.
Should this brief analysis be unconvincing (as obviously it is) the reader is referred to Justice Fortas' treatment of the problems involved in juvenile confessions in Application of Gault, supra, commencing at 387 U.S. 42, 87 S.Ct. 1428.
Rather than attempt the oftentimes impossible task of determining whether a minor "intelligently" waived his rights or whether that waiver was the product of ignorance or fear, I would set aside the adjudication of delinquency on a holding that a juvenile cannot waive his Fourteenth Amendment rights without the benefit of responsible advice and that the introduction of his confession necessarily constituted reversible error under State v. Thomas, 208 La. 548, 23 So.2d 212 (1945), and State v. Henry, 196 La. 217, 198 So. 910 (1940).
NOTES
[1] See Gallegos v. Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325 (1962), and Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), in which the United States Supreme Court could have, but did not, proscribe use of confessions by minors, holding the particular confessions inadmissible under the "totality of circumstances".