| JOHNSON, J.,
Dissenting.
The issue presented for our review is whether the trial’ court erred in declaring La. C.Ch.C. art. 808 unconstitutional in that it offends the Due Process Clause of the U.S. and Louisiana Constitutions by excluding the right to trial by jury in juvenile court proceedings.[1]
The applicable due process standard in juvenile proceedings is fundamental fairness. McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Recent and numerous changes in our Juvenile Justice System require a reevaluation of fundamental fairness and affords this Court an opportunity to revisit our holding in State in Interest of Dino, 359 So.2d 586 (La.1978).[2]
It is important to note that the McKeiver decision lacked a majority rationale and does not stand as the definitive resolution to the issue at hand. The Supreme Court’s wavering pronouncement of the denial of jury trial rights to juvenile of-fehders, signified the evolving' nature of the juvenile justice system even 30 years ago. Indeed, three justices dissented, reasoning juveniles have an unqualified right to a jury trial. At least-two other justices would grant jury trials where a 1?,delinquency proceeding strays too far from its benevolent conception.[3]
*36 In the present case, the juveniles and the amici argue vociferously that the policy-based analysis applied more than 30 years ago when McKeiver and Dino were decided is outdated and that recent changes in state law as well as an on-going national critique of the juvenile justice system render the reasoning behind the two cases outdated and inapplicable to current conditions. I agree.
In In re C.B., et al., 97-2783 (La.3/4/98), 708 So.2d 391, this Court had occasion to thoroughly examine the background and purpose of the juvenile court system and how it meets current challenges. The Louisiana juvenile system was founded upon the philosophy of nurturing and rehabilitating youths. See e.g., La.Ch.C. art. 801. Since the McKeiver decision, however, the Louisiana juvenile system has taken on more trappings of the criminal justice system, so much so that the only substantial difference between the two is the right to a jury trial. See e.g., Feld, Violent Youth, supra, at 966 (The convergence between juvenile and criminal courts “has transformed juvenile courts from nominally rehabilitative welfare agencies into scaled-down, second-class criminal courts for young people.”). -Not only do juvenile defendants have virtually all of the constitutional rights afforded to adult defendants (except the jury trial right), but two recent legislative amendments have torn down the remaining characteristics of what traditionally identified the juvenile system.
First, in 1994, the legislature amended La.Ch.C. art. 407(A) (by Act 120 of 1994), opening to the public all proceedings in juvenile delinquency cases involving crimes of violence as defined in R.S. 14:2(13), which includes attempted ^second degree murder (one of the instant crimes). See also, La.Ch.C. art. 412; La.Ch.C. art. 879(B). This legislative action destroyed the confidentiality of certain juvenile proceedings which previously had been a hallmark of the juvenile system. For example, in the instant case, there were at least two Times-Picayune newspaper articles about the crime, which identified both offenders by name: Natalie Pompilio, Two teenagers shoot each other at school; 13-year-old hits rival, 15, who grabs gun, fires, Times-Picayune, September 27, 2000 at Al; Bob Ussery, Suspect in shooting released from hospital; Woodson student faces Friday hearing, Times Picayune, October 12, 2000, at B3; see also Katy Reckdahl, Kids in the Halls, Gambit Weekly, May 22, 2001, cover story. One of the reasons for not allowing jury trials in juvenile adjudications, besides the philosophical implications that juvenile proceedings were not criminal proceedings, was the issue of confidentiality. “Because the emphasis in traditional juvenile proceedings has been on confidentiality, it has been suggested that introduction of a ‘public element’ represents a ‘clear betrayal of the juvenile court philosophy.’ ” Institute of Judicial Administration, A.B.A., Juvenile Justice Standards Project Standards Relating to Adjudication, p. 71 (1977) (citation omitted). However, this is no longer a concern for juveniles being adjudicated delinquents on the basis of violation of a “violent offense” as defined in La. R.S. 14:2(13).
Second, the Habitual Offender Law provides that juvenile adjudications for drug offenses or crimes of violence (as defined by R.S. 15:529.1) may be used to enhance a *37 subsequent adult felony offense.[4] Before this change, .juvenile 1¿adjudications were sealed and did not follow an individual into adulthood.[5]
In addition, other amendments to the Children’s Code further blur the distinction between juvenile and criminal courts. For example, the Children’s Code calls for mandatory maximum sentencing in certain cases thus eliminating the traditional discretion of the juvenile court judge to mold a disposition to the needs of the juvenile. La.Ch.C. art. 897.1. Furthermore, the four Louisiana Training Institutes, where most juvenile offenders are sent, are becoming increasingly more like adult prisons, providing less rehabilitation, education, etc. and are becoming more punishment oriented. See Fox Butter-field, Louisiana Settles Suit, Abandoning Private Youth Prisons, N.Y. Times, September 8, 2000; Butterfield, Privately Run Juvenile Prison in Louisiana is Al-tacked for Abuse of Inmates, N.Y. Times, March 16, 2000; Butterfield, Few Options or. Safeguards In a City’s Juvenile Courts, N.Y. Times, July 22, 1997, at A1 (“[T]he four Louisiana Training Institutes to which convicted juvenile offenders are sent are reportedly the scenes of the most violent and abusive practices of any children’s prisons in the nation.”)[6]
With these types of changes' taking place, most commentators are calling for states to give juvenile offenders the right to trial by jury. See e.g., Janet E. 1 |5Ainsworth, Youth Justice in a Unified Court: Response to Critics of Juvenile Court Abolition, 36 B.C. L.Rev. 927, 942-44 (1995) [hereinafter Youth Justice ] (addressing the “single most serious procedural infirmity of the juvenile court-its lack of jury trials_”). Thirteen states currently allow jury trials in juvenile delinquency adjudication proceedings as a matter of state law.[7] See also R.L.R. v. State, *38 487 P.2d 27, 32 (Alaska 1971) (when juvenile could have been incarcerated for many years for alleged sale of LSD and sale was regarded with high degree of moral opprobrium, juvenile was entitled under state constitution to trial by jury). Commentators note that the “increasing role of punishment in juvenile justice” makes the right to trial by jury that much more important. Feld, Violent Youth, supra, at p. 1102. They argue that because juveniles are facing mandatory sentences and juvenile adjudications are. being used to enhance felony convictions, it is essential that the juvenile adjudication process be fair and accurate.
The protection afforded juvenile offenders has been further expanded by our recent ruling in In re C.B, supra. There, we struck down a legislative change[8] which allowed for the incarceration of juvenile delinquents in adult facilities upon reaching the age of 17, without first affording them the opportunity to have a jury trial in that it violated state constitutional right to due process. Although we did not grant the juveniles the right to trial by jury in In re C.B., we did note the increasing criminal focus on the punitive aspects of delinquency proceedings and suggested that there may come a time when the juvenile justice system is so far | (¡removed from its original purpose and character such that due process dictates the right to trial by jury, thereby rendering McKeiver and its rationale obsolete. We also noted that the plurality in McKeiver even recognized the tentative nature of its ruling and that the issue may one day be ripe for revisiting when it stated: “If the formalities of the criminal adjudication process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment, we are declined to give impetus to it.” McKeiver, at 551, 91 S.Ct. at 1989.
I believe that our juvenile court system has evolved so drastically in nature that due process requires that juvenile offenders be afforded the right to elect to be tried by a jury. Even without the right to jury trial, all the elements necessary to make the juvenile process into an adversary process have already been injected into the juvenile system including the right to counsel, the privilege against self-incrimination, and the right to confront and cross-examine witnesses.[9]
Moreover, given the incorporation of principles of punishment and accountability into the juvenile system, the adjudications have become more criminal than civil in nature. As stated, juvenile delinquency cases involving crimes of violence, as defined by LSA R.S. 14:2(13), are now open to the public, which essentially destroys the confidentiality and intimacy of certain juvenile proceedings. As detailed above, the instant case has received sensational media coverage. Not only have the facts of this case been publicized, but the names of the offenders involved have been revealed. The defendant certainly does not have the benefit of any confidentiality that the juvenile justice system envisioned upon its inception. This adjudication, through *39 its extreme popularized status, whatever the outcome, will shadow the defendant throughout his childhood and well into his 17adult years.
In addition, the Habitual Offender Law provides that juvenile adjudications for drug offenses or crimes of violence, as defined by LSA R.S. 15:529.1, may be used to enhance subsequent felony offenses. If defendant, in the instant case, is adjudicated, he is faced with the enhancement statutes that add to the real possibility of future exposure to multiple bill consequences as an adult. The adjudication would be more than a mere factor in sentencing him as an adult. Clearly, these “adjudications” are equivalent to adult “convictions.” Therefore, under the. Habitual Offender Law, if he is adjudicated delinquent for the crimes charged, he would have a “conviction” on his record for attempted second degree murder without having had the benefit of a jury trial.
I disagree with the State’s argument that affording juvenile offenders the right to trial by jury would destroy the flexibility of the juvenile judge as the trier of fact. As in many other modern juvenile court statutes, the legislature has separated the proceedings into two phases: adjudicative and dispositional.[10] While a jury would be the appropriate trier of fact at the adjudicative phase, the juvenile judge would retain flexibility in the dispositional phase of the proceeding. The judge would still be free to take into consideration social and psychological factors, family background, and education in order to shape the disposition in the best interest of both the child and society. In fact, if the court adjudicated the defendant in the instant case delinquent, he would face a maximum sentence of eight years detention while the court would retain the discretion to sentence him to a fighter term. La.Ch.C. art. 897; La. Ch.C. art. 897.1. An adult defendant convicted of the identical charge would face a maximum sentence of 55 years ^^imprisonment at hard labor, 50 years without benefit of parole, probation or suspension of sentence. R.S. 14:27 (R.S. 14:30.1); R.S. 14:95.2. However, it should also be recognized that any adult charged with an Offense punishable by more than six months'imprisonment would be entitled to exercise the right to a trial by jury. La. Const, art. I, § 17; La.C.Cr.P. art. 779(A). This disparity between penalties meted out to the adult and juvenile offender apparently reflects the widely-held belief that juveniles who commit crimes are less culpable than their adult counterparts. It is clear that allowing the right to jury trial will not destroy this unique feature of the juvenile system.
Trial by jury is a safeguard “fundamental to the American scheme of justice ... in order to prevent government oppression ... through the interposition of the ‘common sense judgment’ of a jury between the accused and his adversary.” Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Affording juvenile offenders, who are viewed as ‘criminals’ in our society today, the right to trial by jury will provide the safeguards of due process that are enjoyed by adult ‘criminals.’ Given the transformation of the modern juvenile court system from ‘civil’ to ‘criminal’ in nature, through numerous and significant legislative changes in Louisiana, it is clear that the rationales behind McKeiver and Dino are no longer tenable and due process and fundamental fairness, therefore, require the extension of the jury trial to the defendant in this case.
*40 Although the trial- court’s decision was ultimately premised on fundamental fairness and due process, I also find that the provisions of the Louisiana Children’s Code which deny juvenile offenders the right to trial by jury violate the Equal Protection Clause of the United States and Louisiana Constitutions.[11]
Equal protection of the laws requires that, upon his request, a juvenile is disentitled to receive the same mode of jury trial which is available to. an adult charged with the same offense. Significantly, under the Habitual Offender Law, an adult defendant charged with a violent crime faces possible future enhancement of sentence but has the benefit of a jury trial, while a juvenile faced with these same possibilities is given less protection. What is. the state’s interest in this regard? The differential treatment of juveniles and adults cannot be justified on the theory that the denial of the jury trial to juveniles is essential to the preservation of the rehabilitative characteristics of the juvenile system. Nor can it be justified on.the basis of the expedient nature of juvenile proceedings. As stated above, these characteristics of the juvenile systems have been eroded by our legislature and jurisprudential rulings.
Accordingly, I would affirm the trial court’s granting of defendant’s motion for jury trial and declaring La.Ch.C. art. 808 unconstitutional in that it is in derogation of a juvenile offender’s due process and equal protection rights.

. Although the trial court's judgment declared only La.Ch.C. article 808 unconstitutional, it is clear that the intent was to find all articles which deny juveniles the right to jury trial unconstitutional, including La.Ch.C. art. 882.

. Dino followed the plurality holding of McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), and held that "[Qor reasons similar to those expressed in McKeiver, a majority of this Court has concluded that the Louisiana due process guaranty ... does not afford a juvenile the right to a jury trial during the adjudication of a charge of delinquency based upon acts that would constitute a crime if engaged in by an adult." Dino, 359 So.2d at 598.

.justice Blackmun announced the judgments ' of the Court and delivered an opinion in which Burger, C.J., and Stewart and White, LL, joined. White, J. filed a concurring opin *36 ion. Brennan, J. filed an opinion concurring in the judgment in No. 322 and dissenting in No. 128. Harlan, J. filed an opinion concurring in the judgments. Douglas, J., filed a dissenting opinion, in which Black and Marshall, JJ., joined.

. Those crimes of violence enumerated in R.S. 15:529.1(A)(2) are attempted first degree murder, attempted second degree murder, manslaughter, armed robbery, forcible rape, simple rape, second degree kidnapping, a second or subsequent aggravated battery, a second or subsequent aggravated burglary and a second or subsequent offense of burglary of an inhabited dwelling.

. In United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) and Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court prohibited the use of prior convictions that were entered without the advice of counsel to enhance later sentences. In a related vein, some commentators suggest that the practice of using juvenile convictions obtained without the option to be tried by a jury to enhance adult sentences renders the juvenile system unconstitutional. See e.g., Sara E. Kropf, Note, Overturning McKeiver v. Pennsylvania: The Unconstitutionality of Using Prior Convictions to Enhance Adult Sentences Under the Sentencing Guidelines, 87 Geo. L.J. 2149 (1999); David Dormont, Note, For the Good of the Adult: An Examination of the Constitutionality of Using Prior Juvenile Adjudications to Enhance Adult Sentences, 75 Minn. L.Rev. 1769, 1793-94 (1991).

. Butterfield’s articles paint a less than flattering picture of Louisiana’s juvenile courts, noting that the system is "considered by many lawyers and children’s rights advocates to be the most troubled juvenile court system in the country.” Fox Butterfield, Few Options or Safeguards In a City’s Juvenile Courts, N.Y. Times, July 22, 1997, at A1. The article also recounts one juvenile judge's practice of announcing the verdict before trial. Id. In addition, Butterfield writes that the rate of conviction in the New Orleans juvenile court "has remained steady at about 80 percent of all cases each year,” where "[b]y comparison, the national average is only 33 percent.” Id.

. See Alaska Stat. § 47.10.070 (1991); Colo. Rev.Stat. § 19-2-501 (Supp.1983); Mass Gen Laws Ann. ch. 119, § 55A (West 1993); Mich Comp. Laws Ann. § 712A. 17(2) (West 1993); Miss.Code Ann. § 43-23-15 (1993); Mont. Code Ann. § 41-5-521(7) (1991); N.M. Stat. Ann. § 32-1-31A (Michie 1988); Okla. Stat. Ann. tit. 10, § 1110 (West 1987); Tex. Fam. *38 Code Ann. § 54.03(c) (West Supp.1995); W. Va.Code § 49-5-6 (1992); Wisc. Stat. Ann. § 48.31(2) (West 1987); Wyo. Stat. § 14-6-223(c) (1994); Ill.Ann.Stat. ch. 37, para. 803-35 (Smith Hurd 1992); Kan Stat. Ann. § 38-1656 (1986); S.D. Codified Laws Ann. § 26-8-31 (1984); Va.Code Ann. § 16.1-272 (Michie 1988).

. Act 1063 (House Bill 1253), effective July 14, 1997; LSA-RS 15:902.1.

. In Re Gault, supra.

. State in Interest of Dino, 359 So.2d 586 (dissenting opinion) citing State v. Melanson, 259 So.2d 609 (La.App. 4th Cir.1972)

. La. Const., 1974, Art. I § 3,