181 So.2d 756

**STATE of Louisiana**

v.

**Henry MONTGOMERY.**

No. 47895.

Jan. 17, 1966.

———◆———

Murphy W. Bell, Johnnie A. Jones, Baton Rouge, for appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for appellee.

HAMLIN, Justice.

Defendant appeals from his conviction of and sentence to death for the crime of murder (LSA–R.S. 14:30) of Charles H. Hurt, a Deputy Sheriff for the Parish of East Baton Rouge.

Twenty-eight Bills of Exceptions were reserved during the course of trial.

In this Court, counsel for the defendant have not briefed the Bills of Exceptions reserved but have submitted the following five specifications of errors directed to the conviction of defendant:

"I. The conviction below violates constitutional guarantee of due process of law in the following respects:

"a) The accused was tried and convicted in an atmosphere of intense passion for the victim * * * 'that counsel, jury, and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Court (s) failed to correct the wrong.' Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543.

"b) That the chief prosecutor for the State 'appeared at certain stages of this prosecution as a prosecutor and appeared later as a prosecuting witness (with a personal interest). The two roles are incompatible.' State of Louisiana v. B. Elton Cox and Arthur Jelks, 246 La. 748, 167 So.2d 352.

"c) That R.S. 15:267 requires that two disinterested physicians may be appointed by the Court to examine the defendant with regard to his present mental condition; that the presiding judge appointed the Coroner and Deputy Coroner of East Baton Rouge Parish over objection of counsel * * *; that later these two physicians appeared as important State witnesses against the accused, claiming that during the course of their examination the accused 'confessed' which confession was neither revealed to defense counsel or at the sanity hearing, but appeared for the first time at the trial on the merits.

"II. The accused was denied right of counsel at a crucial stage of the proceedings against him. After the investigation had 'focused' on the defendant, a 17 year old Negro youth of low mentality, the rule of Danny Escobedo v. Illinois [378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977] * * *, decided June 22, 1964, applied, especially in view of the fact that the District Attorney had begun representing the State of Louisiana by eliciting a confession, inter alia, prior to appointment of counsel.

"III. The alleged confessions were coerced.

"IV. The grand and petit juries were not impartially selected.

"V. The Judge's comment on the evidence was fatally defective."

We shall discuss only those Bills of Exceptions necessary to our disposition of this matter, which we shall hereinafter remand to the district court for a new trial.

Bills of Exceptions Nos. 4 and 5 (combined) were reserved to the rulings of the trial judge denying defendant's motion for change of venue and his motion to quash the Bill of Indictment. These bills were directed to the issue of prejudice with particular regard to the indictment which originally recited, "That Henry Montgomery

alias 'Wolf Man' * * *" Defendant averred that prejudice existed in the public mind and was caused by the unfair bringing of the indictment by the East Baton Rouge Parish Grand Jury under the false alias dictus of Henry (Wolfman) Montgomery and the widespread dissemination of said alias to the general public of the Parish by the newspapers, radio, and television outlets.

On January 10, 1964, on motion of the District Attorney, the indictment was amended by the Clerk of Court by physically striking and deleting the words "alias Wolfman" therefrom. On the same day, a motion to strike was filed by counsel for the defendant.

Defendant's motion for a change of venue and his motion to quash the indictment were heard on January 20, 1964. Testimony of representatives of local newspapers, TV Stations, and radio stations was adduced. These witnesses in great part admitted using the alias or sobriquet "Wolfman," but they all stated that such use was not to bring about the conviction of the defendant. The motions were overruled.

We find no legal defects in the instant indictment, nor do we find that counsel has alleged its insufficiency. Striking of the sobriquet was favorable to the defendant, and such verbiage having been removed, no reason existed for quashing the indictment. Even if the use of the alias had any prejudicial effect upon the defendant, such prejudice would not have been reason for quashing the indictment after its amendment. Therefore, we find that the indictment is valid.

There is no necessity for our discussing the issue of change of venue. In his motion for change of venue, defendant averred that because of his indictment under the false alias dictus of Henry (Wolfman) Montgomery he did not think he could get a fair and impartial trial in the Parish of East Baton Rouge. He further averred that his constitutional rights would be violated by trial in that parish.

The trial judge heard evidence on defendant's averments and denied his motion, holding that defendant had not proved that his constitutional rights protecting him from prejudice would be violated because of the then stricken sobriquet. Infra, we shall find that what defendant should have been granted, under the facts existing several days before trial commenced, was a continuance. At present we are unable to pass upon whether or not he will be entitled to a change of venue in the future.

Bill of Exceptions No. 6 was reserved when the trial court denied defendant's motion for continuance and/or change of venue. The motion recited in part:

"That the accused, HENRY MONT-GOMERY, is a member of the Negro race and a citizen of the State of Louisiana and of the United States of

America, but avers that he has reason to believe, and so believing alleges that he will be unable to get a fair trial in the Parish of East Baton Rouge due to the involvement of certain prominent state, parochial and municipal officials in the memorialization of the victim in this cause, and *before* the trial thereof; that these actions and efforts, though commendable in themselves, have been unfortunately 'timed' to coincide with the trial of your mover, Henry Montgomery, thus causing great prejudice to your mover, and will deprive him of his life without due process of law, unless the relief prayed for will be granted by this Court. * * *

"* * *

"That mover makes this application as soon as he discovered the existence of such prejudice, and that this application is made, not for the purpose of delaying the trial of your defendant, but for the purpose of securing an impartial trial, WHEREFORE MOVER PRAYS:

"I. That the District Attorney for East Baton Rouge Parish be ordered to show cause upon a day and at an hour certain, why the motion for continuance or alternatively a change of venue should not be granted."

Trial was set for Monday, January 27, 1964; the motion for continuance and/or change of venue was filed on January 22, 1964, after the following news item appeared in the STATE-TIMES, Baton Rouge, Louisiana, on the afternoon of January 22, 1964:

"Resolution Cites Charles Hurt at Committee Meet

"The presentation of a resolution in memory of her husband to Mrs. Charles Hurt was a feature of the second meeting of the steering committee of the Charles Hurt Fund this morning.

"The group, which includes backer of the fund and representatives of the communications media, met in the state capitol office of fund chairman, Wade O. Martin, Jr., Louisiana Secretary of State.

"The resolution commemorating Hurt, deputy sheriff who was killed in the line of duty Nov. 13, was passed by the National Conference of Police Associations and was presented to Mrs. Hurt by Sheriff Bryan Clemmons.

"During the business portion of the meeting, the sheriff was elected vice-chairman. Frank Trimble, chief deputy, was placed in charge of handling funds.

"Contributions to the Charles Hurt Fund, which has been established for his widow and three children, should be sent to the sheriff's office in the parish courthouse.

"Martin noted that there had been a substantial increase in donations and that the fund now totals $3,426. He said pledges and contributions had come from many persons who had commented they hadn't realized the fund was lagging.

"Martin also said that some professional services and materials and supplies had also been donated, so that the committee had not had to make any purchases so far.

"The chairman read a letter from a 7½-year-old boy, who sent to the fund $5 which he had received as a Christmas present.

"The committee will send a letter asking assistance in the drive to school principals, businessmen and civic and social organizations in the parish.

"It was also reported that the City-Parish Council would be asked to proclaim Monday, Jan. 27, as Charles Hurt Day, with a possible state-wide proclamation also in view."

On January 22, 1964, the Parish Council of the Parish of East Baton Rouge adopted a resolution, section 1 thereof reciting:

"January 27, 1964 is hereby proclaimed to be Charles Hurt Day. The officers and employees of the City of Baton Rouge and the Parish of East Baton Rouge and all citizens of this community are urged and requested to remember Charles Hurt and the duty he performed on this day and to further generously contribute to the Charles Hurt Memorial Fund in order that the family of Deputy Hurt may be cared for and his memory preserved in the annals of law enforcement in this Parish and State."

The MORNING ADVOCATE, Baton Rouge, Louisiana, of Thursday, January 23, 1964, carried a picture of Sheriff Bryan Clemmons and Mrs. Hurt. Below the picture was the following:

"MEMORIAL AWARD—Sheriff Bryan Clemmons presents widow of slain Deputy Charles Hurt with a memorial resolution from the National Conference of Police Associations. Mrs. Hurt attended a meeting of the steering committee for the Deputy Charles Hurt Fund Drive."

The news item next to the picture was very similar to that which had appeared in the STATE–TIMES. It made the following statement:

"The day selected for the memorial recognition is the same one as that set for trial of Henry (Wolf Man) Montgomery, Negro juvenile charged with murder in Hurt's death."

The MORNING ADVOCATE of January 20, 1964 carried a news story (AP)

from Atlanta, Georgia. The following was stated in the body of the story:

"In Baton Rouge, an anonymous caller told the Morning Advocate the burning crosses signaled a reactivation of the Klan in that area. The caller said 100 crosses would be burned.

"Crosses were burned in a dozen or more Louisiana cities last September, including one on the state Capitol grounds at Baton Rouge."

The motion for a continuance and/or change of venue was heard on Friday, January 24, 1964. The District Attorney for the Parish of East Baton Rouge testified as follows:

"Yes, sir. I would like to state that the first I knew of the so-called Charlie Hurt memorial day came to my attention yesterday afternoon when I was served with a copy of this motion by opposing counsel in which was attached the newspaper story of Wednesday the 22nd and Thursday the 23rd. I would like to state that this matter was never discussed with either me or any member of my staff, that we knew nothing whatever of the offering of the resolution or its adoption, we knew nothing of the newspaper coverage concerning this matter and I would like to testify at this moment that there are less than twenty people in this courtroom indicating to me the interest in

this case and the conviction of the accused. * * *"

Honorable Wade O. Martin, Secretary of State and the General Chairman of the Hurt Fund Drive, testified as follows:

"Q. Now, at that meeting was it pointed out to you and the other members of the steering committee by the Sheriff that possibly that date would be changed because the Henry Montgomery trial was coming up on Monday, January 27?

"A. That question was mentioned by the Sheriff, yes.

"Q. What was the concensus of the news media present to the effect that it would have no effect whatever on the reading public as to whether or not that day was selected or not?

"A. Well, after the discussion the representatives of news media and others on the advisory committee was present and I had already reported to them that the date had been fixed and the concensus was that this is already done and that they didn't feel that it would have any effect, the declaration of a particular day by the council is something that is done almost daily for something or other and this was just another small part

of the overall drive to try to get funds for the widow and children of Mr. Hurt.

"Q. And it was not quote timed end quote by your committee or the Council to fall on a day that Henry Montgomery came to trial, is that correct?

"A. I suggested the date and I repeat at the time I suggested it it was arrived at purely on the basis of an appropriate time in the preparation of the drive proceedings and I did not know at that time anything about the trial."

In denying defendant's motion, supra, the trial judge stated in part:

"* * * Based on my statements made already this morning here now, I would say that the fact that the Council has passed a resolution fixing January 27th as some sort of special day, I have forgotten what they call it, and calling upon the people of this Parish and City to contribute money to the victim's widow will have absolutely no effect whatsoever on the fairness and the qualifications of the men who will be called upon to constitute the jury to try this case.

Therefore, the motion for a continuance and the alternative the motion for a change of venue are overruled."

Under the circumstances existing in East Baton Rouge Parish during the week prior to January 27, 1964 in preparation for Charles Hurt Day, it would be untenable and unreasonable to say that the sympathy of the community of East Baton Rouge Parish was not stirred for Mrs. Hurt. It also leaps to the mind that this sympathy could not extend to and in no way be beneficial to the defendant. It is also reasonable to observe that when a city takes notice of a day as a special day to memorialize the memory of a person killed in the line of duty, such memorialization has an effect on a great number of its citizens. Certainly the hearts of many must have been touched by the preparations, and their feelings (whatever they were) could not have remained sealed within themselves.

"* * * Prejudice is not visible or tangible, and cannot be heard or seen moving about in a community. It is itself the result of a friction of ideas, based on opinions formed, expressed, circulated and crystallized into excitement or into a spirit of persecution or vengeance. * * *" State v. Ford, 37 La.Ann. 443, 453.

"* * * it is settled by authority that a state of public excitement against the accused is not a good ground for a continuance." State v. Ford, supra.

"As a general rule, and in the absence of extraordinary or unusual circumstances, public excitement or prejudice

is not of itself a sufficient cause for the continuance of a criminal case, at least where such excitement or prejudice is not such as to prevent a fair and impartial trial. The mere fact that there has been widespread adverse pretrial publicity about accused does not, by itself, establish the reasonable probability that accused cannot obtain a fair and impartial jury at the trial so as to entitle him to a continuance. In the vast majority of such cases the proper procedure is not to postpone the trial, but to proceed to trial and to determine on the voir dire of the panel and the individual talesmen whether a fair and impartial jury can be selected.

"However, it has been recognized that there may exist unusual and extraordinary circumstances of public excitement or prejudice preventing a fair and impartial trial and warranting the granting of a continuance until there has been a reasonable time for the excitement or prejudice to subside; and the fact that accused failed to move first for a change of venue does not preclude him from asking for such a continuance. What constitutes unusual or extraordinary circumstances sufficient to entitle accused to a continuance is ordinarily a question addressed to the sound discretion of the trial court. Since the trial court can much better determine the propriety of a postponement on this ground than can the appellate court, it requires a very strong showing to induce the higher court to interfere, and it will disturb the action of the trial court only where a clear abuse of discretion is shown." 22A C.J.S. Criminal Law § 497, pp. 156–158.

■ LSA–R.S. 15:320 provides that the granting or refusing of any continuance is within the sound discretion of the trial judge. The jurisprudence is legion to the effect that his ruling will be disturbed only when he has arbitrarily or unreasonably abused his discretion. State v. Comery, 214 La. 245, 36 So.2d 781; State v. Ganey, 246 La. 986, 169 So.2d 73.

A reading of the evidence attached to Bill of Exceptions No. 6 convinces us that more than mere excitement existed in East Baton Rouge Parish at the time the motion for continuance and/or change of venue was heard. We are constrained to conclude that the feelings which existed prior to trial (as shown by the evidence of record) permeated the atmosphere and prejudiced the defendant. Except for the alleged crime, Charles Hurt Day would not have been designated.

■ We cannot say that the jury which rendered the instant verdict was not impartial (Art. I, Sec. 9, La.Const. of 1921), but we conclude that the substantial rights

of the accused suffered as a result of the denial of his motion for a continuance. Therefore, no one could reasonably say that the verdict and the sentence were lawfully obtained. State v. Henry, 196 La. 217, 198 So. 910. Cf. State v. Faciane, 233 La. 1028, 99 So.2d 333; State v. Rideau, 246 La. 451, 165 So.2d 282.

We find that Bill of Exceptions No. 6, with reference to the refusal of a continuance, has merit.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict of the jury and the sentence of the trial court are annulled and set aside, a new trial is granted, and the case is remanded to the lower court for further proceedings.

SANDERS and SUMMERS, JJ., dissent with written reasons.

SANDERS, Justice (dissenting).

The majority holds defendant could not get a fair hearing on the trial date because prejudice against defendant permeated East Baton Rouge Parish. Hence, the trial court erred in denying defendant's motion for a continuance. I do not agree with this holding.

The testimony overwhelmingly shows that a fair trial could be had. On cross-examination, most witnesses called by the defendant admitted a fair trial could be conducted.

Between the alleged offense and trial, over two months, no hostile demonstrations occurred. The record does not reflect that defendant exhausted his peremptory challenges or that he was forced to accept an obnoxious juror.

Therefore, the trial court did not abuse its discretion in overruling the motion for a continuance.

For the reasons assigned, I respectfully dissent.

SUMMERS, Justice (dissenting).

I concur in the dissenting opinion of Mr. Justice SANDERS.