311 So.2d 866 (1975)
STATE of Louisiana
v.
Willie J. CARRUTH.
No. 55726.
Supreme Court of Louisiana.
April 24, 1975.
*867 Robert Glass, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of simple burglary, La.R.S. 14:62, and sentenced to eight years at hard labor. The assignment of error incisively contends: "The trial court erred in not granting a continuance to the defendant charged with burglarizing a gun store when the trial date followed the highly publicized Howard Johnson sniper holocaust by three days; and then compounded this error by not granting a new trial after the state's case at trial showed that the burglar had stacked high powered rifles and that defendant had stated he wanted a rifle `to kill some pigs."
Due to activation of a burglar alarm, the defendant was caught on the premises while burglarizing a retail firearms outlet. According to the testimony of the prosecution witnesses, several rifles had been taken from lockers and were assembled, as if for removal from the premises. The burglary occurred on July 30, 1972.
Pursuant to a prior fixing, the burglary charge came up for trial some six months later, on the morning of January 11, 1973. Four days earlier, a sniper on the rooftop of the Howard Johnson Motel in the city of the trial had held the police department at bay for about twenty-four hours, killing several policemen and civilians. Massive and constant television and radio coverage and extensive press attention focused on the incident. It was also linked with a sniper's killing of a police cadet about a week earlier.
The Howard Johnson sniper turned out to be a young black man.
Before the trial commenced, some three days after the sniping incident ended, the defendant's attorney moved for a continuance. He argued that the defendant, a young black man charged with stealing guns and who may have made certain inflammatory statements at the time (six months earlier), could not receive a fair trial in the highly charged atmosphere surrounding the massively publicized Howard Johnson sniping incident.
The continuance was sought on the ground that unusual and extraordinary circumstances of public excitement and prejudice existed which prevented a fair and impartial trial in the emotion-charged atmosphere, so that a continuance should be granted to permit the excitement to subside. La.C.Cr.P. art. 712; State v. Montgomery, 248 La. 713, 181 So.2d 756 (1966).
The limited showing made in order to justify the continuance referred only to the *868 public excitement and massive publicity about the Howard Johnson incident. However, it was conceded that the present burglary six months earlier had no connection whatsoever with the Howard Johnson sniper or incident, which did (for instance) not even concern a stolen gun but rather one purchased in Kansas.
The granting of a continuance lies within the sound discretion of the trial court, which will not be disturbed on review unless there is a clear showing of abuse. State v. Navarre, 289 So.2d 101 (La.1974). In view of the lack of connexity between the charge and the publicized incident, as well as of the limited showing made at the time of the motion, we cannot say the trial court abused its discretion in refusing to continue the trial on the charge, described at the time as of a simple and uncomplicated burglary.
An even closer issue is presented by the subsequent denial of the motion for a new trial after the conviction. The motion is based not only on the massive pre-trial publicity about the Howard Johnson incident, but also upon the State's having elicited testimony at the trial that the defendant had told an arresting officer at the scene that he was "looking to get an M-16 [rifle] to kill some white pigs".[1] The defendant thus principally contends that he should be granted a new trial because the ends of justice will be served, La.C.Cr.P. art. 851(5), since his first trial was unfairly infected with massive public excitement and prejudice.
At the hearing on the new trial motion, the evidence fully developed the massive nature of the pre-trial publicity about the Howard Johnson incident. The injection of a racial motive into the present burglary trial made somewhat less tangential its relationship to the Howard Johnson sniping incident, although the publicity about the latter did not to any degree indicate a racial motivation by the young black sniper.
Nevertheless, again we are unwilling to disturb the large discretion of the trial court in its denial of a new trial, in the absence of a finding of clear abuse. State v. Randolph, 275 So.2d 174 (La.1973).
The State's case in chief consisted entirely of a factual account of the details of the burglary (see Footnote 1), and its argument to the jury emphasized the nonimportance of the guns to the crime of burglary, pointing out that the crime could as well be committed if the object of the theft were a tire or a pair of shoes. The burglary of which the defendant was convicted bore, in fact, no relationship or similarity to the Howard Johnson incident, except that both the defendant and the Howard Johnson sniper were young blacks. The eliciting of the "white pig" statement was not objected to; any prejudice caused by it was, in our opinion, independent of the publicity about the Howard Johnson incident.
Accordingly, we are unwilling to find an abuse of discretion by the trial court in its refusal to grant either a continuance or a new trial, insofar as sought on the basis of the massive pre-trial publicity relating to the Howard Johnson sniper incident.
The conviction and sentence are therefore affirmed.
Affirmed.
NOTES
[1] The defendant took the stand to deny any part in the burglary. (He testified that he was in a nearby alley relieving himself and that, when he came out, the policemen seized him and commenced beating him in the presence of a crowd of about one hundred bystanders.) He was the sole defense witness. (Four police officers and a burglar-alarm employee had testified to his being captured in the building.) On cross-examination by the State, he denied making the "white pigs" statement. On rebuttal, the State proved it as a prior statement inconsistent with his trial testimony. No objection was made at any time as to questions or testimony concerning the statement.