352 So.2d 629 (1977)
STATE of Louisiana
v.
Granville TENNANT, Willard Clark, Calvin L. Wilson.
No. 59450.
Supreme Court of Louisiana.
November 14, 1977.
Rehearing Denied December 14, 1977.
*631 Harold J. Brouillette, Marksville, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Eddie Knoll, Dist. Atty., Jeannette Theriot Knoll, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Granville Tennant, Willard Clark and Calvin L. Wilson were jointly charged by bill of information with two counts of simple burglary. La.Rev.Stat. 14:62. In a joint trial by jury defendants were all found guilty as charged. They were sentenced to serve nine years at hard labor on each count, the sentences to run consecutively. The trial judge also ordered that the sentences of Tennant and Wilson were to run consecutively with any other sentences they were serving. All three defendants rely upon the same five assignments of error for reversal of their convictions and sentences. A pro se brief by Tennant alleges five assignments of error relating to a habeas proceeding in another burglary conviction which was appealed and affirmed. State v. Tennant, 262 La. 941, 265 So.2d 230 (1972). Therefore that pro se brief will not be considered here.

Assignments 1 and 5
Defendants claim that the verdict of the jury is contrary to the law and the evidence in that it is based primarily on the testimony of an alleged accomplice, Donald Ray Caine, whose testimony, on its face, is patently unworthy of belief. His testimony is alleged to be replete with contradictions and changes, particularly from prior testimony at preliminary examinations. In addition, it is asserted that Caine is an admitted narcotic user who testified that he was under the influence of narcotics at the time of the alleged offenses.
While conceding that the issue presented by these assignments of error may be considered beyond the scope of appellate review, defense counsel nevertheless argues that the refusal to grant a new trial was an abuse of discretion, a question of law, which may be properly reviewed on appeal in this Court.
The cases relied upon by the defense do not support its position. While the proposition that a question of law is presented when the trial judge has abused his discretion in refusing to grant a new trial has been recognized by the cases relied upon, they do not support the defense position here. State v. Howard, 325 So.2d 812 (La. 1976); State v. Carruth, 311 So.2d 866 (La. 1975); State v. Landrum, 307 So.2d 345 (La.1975); State v. Hatch, 305 So.2d 497 (La. 1974), cert. denied, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975); and State v. Randolph, 275 So.2d 174 (La.1973). The issues considered in those cases did not involve the credibility of witnesses at the trial, the weight to be given to their testimony, or the sufficiency of the ordinance, factual matters within the province of the jury over which this Court has no jurisdiction.
The proper procedure for presenting a question of no evidence to sustain a conviction is to allege that ground as a basis for a new trial in a written motion after verdict and before sentence. La.Code Crim. Pro. 851-58.
Section 5(C) of Article V of the Constitution states: "In criminal matters, its [the Supreme Court's] appellate jurisdiction extends only to questions of law." The intent of this constitutional limitation of jurisdiction is reflected in Article 858 of the Code of Criminal Procedure, which implements the Constitution in these words: "Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law."
The fact that there was some evidence of the essential elements of the crime, no matter how little, denies jurisdiction to this Court. It is only where there is no evidence at all to support an essential element of the crime that a question of law is presented because the law will not sanction conviction of a crime on no evidence. Under this doctrine this Court cannot review *632 the sufficiency of the evidence. A clear case of usurping the jury's fact-finding prerogative would be presented if this Court approved the defense contention. See State v. Buckley, 344 So.2d 980 (La. 1977); State v. Lewis, 343 So.2d 1056 (La. 1977); State v. Lee, 340 So.2d 180 (La. 1976); State v. Smith, 332 So.2d 773 (La. 1976); State v. Butler, 331 So.2d 425 (La. 1976); State v. Kaufman, 331 So.2d 16 (1976).
These assignments are without merit.

Assignment 2
Motions were filed prior to trial on behalf of defendants to suppress for use as evidence certain objects such as a hammer, an axe, a screwdriver, money and containers seized from Tennant's automobile on March 29, 1976; the motions alleged that these objects were obtained as a result of an unconstitutional search and seizure.
According to the motions, the automobile was being detained by a deputy sheriff in order that he might question its occupants. No evidence of criminal activity by the occupants had been revealed. The officer searched the automobile, including the trunk, without permission to do so, and without knowing what he would find. There was ample time to secure a search warrant and the action of the officer amounted to an arrest based upon his findings, rather than information within his knowledge providing probable cause for the arrest and the accompanying search and seizure.
The State submits that the search of the vehicle was valid on two grounds: consent was given and probable cause and exigent circumstances were present to justify the warrantless search.
After a hearing the trial judge denied the motion to suppress. Because this ruling is based upon the credibility of witnesses and the weight of the evidence, it should not be overturned in the absence of palpable abuse of discretion. Any other rule will involve this Court in the nearly impossible task of reviewing these factual issues on every motion to suppress. In any event, the following testimony supports a finding by the trial judge that the officer who conducted the search and seizure had permission to do so.
Deputy Sheriff Rick Juneau testified as follows at the motion to suppress:
"Q. Did you search the car in the meantime, sgt. Juneau?
A. Yes, mam.
Q. What point did you search the vehicle?
A. After the driver of the car gave me the consent.
Q. At what point did you ask him?
A. Immediately after he got out and I got his driver's license. And, after I had patted him down.
Q. Was that immediately after you had patted him down?
A. Yes, mam.
. . . . .
BY THE COURT:
The question the court asked you, was, give us the conversation. You said, he gave you permission to search the car. The driver of the car said you could search the car. And I asked you to tell me the language that you used, if you asked him to search, or he said, look at my car, I'm just resting? I want to know what words were exchanged between you and the man, with reference to searching his automobile.
A. I asked him, may I look inside your car? And, he said, yes, go ahead. And, I did.
Q. Did he object at anytime of you searching the car?
A. No, mam.
Q. Did anyone try to stop you?
A. No, mam.
BY THE COURT:
Did he open the trunk for you to look?
A. No, sir, I opened the trunk myself.
Q. Did he gave you the key?
*633 BY THE COURT:
Yes, did he give you the key?
A. No, sir, I had the keys.
Q. Where did you get the keys from?
A. From the ignition."
On cross-examination Deputy Juneau testified:
"Q. All right. Now, you said that the driver told you that you could look inside the car, is that correct?
A. Yes, I did.
Q. You never asked them if you could look inside the trunk, did you?
A. Well, said look inside the car, and I assumed the whole car."
In summarizing the Deputy's testimony, the trial judge asked:
"BY THE COURT:
Did you ask him two different times to search, or when he told you yes, go ahead and look, you took the keys, and then you had the keys, and you looked through the window, and later you opened the trunk without asking anymore?
A. Correct, sir.
BY THE COURT:
That's what it is? Okay. You get that?
A. I was by myself; I had the keys.
BY THE COURT:
But, when he came back, you opened the trunk?
A. Right.
BY THE COURT:
After Cal came back? But, you had the keys before, and he had given you permission, before?
A. Right."
. . . . .
BY THE COURT:
. . . [H]e just asked, can I look into your car; and he said yes. And, I gather, he reached for the ignition keys. They were in the ignition switch.
A. Yes, sir.
BY THE COURT:
So, he reached . . . but he didn't look except the main automobile, through the windows. And, when Cal came back, then he opened the trunk on his own. He didn't ask any more permissions. Now, did he advise him of any further rights?
A. Yes, sir."
Again on cross-examination, Deputy Juneau testified:
"Q. Okay, now, the consent that you received to search the car, is there any standard procedure that the Police Department has in obtaining the consent?
A. No.
Q. You just simply asked them?
A. In other words, if I asked him consent to search his car, and he says, yes, go ahead . . . He's voluntarily given me permission to search his car. I need no form or nothing."
There is no merit to this assignment. A search or inspection conducted with the consent of a defendant is an exception to both the warrant and probable cause requirements of the law. And the voluntariness of the consent is a question of fact to be determined by all of the facts and circumstances of each case. In such a determination the trial judge's conclusions on credibility are entitled to great weight. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Schouest, 351 So.2d 462 (La.1977) decided October 10, 1977. State v. Linkletter, 345 So.2d 452 (La.1977); State v. Strange, 334 So.2d 182 (La.1976); State v. Hubbs, 261 La. 173, 259 So.2d 53 (1972).

Assignment 3
Prejudical error is claimed because, over defense objections, the trial judge overruled the motion to sever the cases against the individual defendants.
At the hearing on the motion to sever, defendants Wilson and Clark presented no evidence. Under oath counsel for defendant Tennant testified that his defense strategy would require him to call codefendant Wilson to give testimony favorable to his *634 client. He further stated that, even if Wilson was tried separately and yet refused to testify at defendant Tennant's trial, he could be compelled to take the stand and assert his fifth amendment privilege, the effect of which would be beneficial to defendant Tennant. Counsel for defendant Wilson was also sworn as a witness and testified that, although he would not permit his client to testify at a joint trial, he would allow him to testify under certain circumstances if defendants were tried separately. In denying the motion, the trial judge explained that if a severance was granted defendant Wilson might nevertheless refuse to testify at Tennant's trial and Wilson's assertion of his fifth amendment privilege would raise at most a mere inference in favor of Tennant. The trial judge concluded that no prejudice had been shown warranting severance.
The ruling was correct. The fact that a defendant wishes to call his co-accused to the stand as a witness is not a sufficient ground for a severance since the co-accused may assert his fifth amendment privilege and refuse to testify at the defendant's trial. State v. Perique, 340 So.2d 1369 (La.1976); State v. Lee, 340 So.2d 1339 (La.1976); State v. Hunter, 340 So.2d 226 (La.1976); State v. Medlock, 297 So.2d 190 (La.1974); State v. Baker, 288 So.2d 52 (La. 1973); State v. Kemp, 251 La. 592, 205 So.2d 411 (1968).
Jointly indicted defendants shall be tried jointly, unless the State elects to try them separately, or the court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance. La. Code of Crim.Pro. art. 704.
Louisiana courts interpreting Article 704 have stated that the granting of a severance rests in the sound discretion of the trial judge and his ruling will not be set aside unless it is manifestly erroneous and injurious to the defendant. State v. Mack, 243 La. 369, 144 So.2d 363 (1962), cert. denied, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963); State v. Progue, 243 La. 337, 144 So.2d 352 (1962); State v. Faciane, 233 La. 1028, 99 So.2d 333 (1958).
This assignment is without merit.

Assignment 4
In response to motions for bills of particulars, the State filed answers on May 13, 1976 stating that it did not intend to introduce evidence of other crimes. On October 14, 1976, however, the State did file a notice of its intention to introduce evidence that all three defendants committed a burglary of the Deville Post Office in Rapides Parish on the same evening, allegedly, only minutes prior to the two burglaries with which they were charged.
Notice that evidence of the Deville Post Office burglary would be used was filed six days before the trial in ample time for defendants to adjust their defense to the State's charge. Reasonable notice was given. There is no error in this respect.
The principal issue, however, concerns the defense contention that evidence of the Deville Post Office burglary did not qualify as an exception to the general rule prohibiting evidence of other offenses.
At the trial Donald Ray Caine, an accomplice of defendants, testified on behalf of the State. Outside the presence of the jury Caine testified that shortly after midnight on March 29, 1976 he drove with defendants to the settlement of Deville. Upon arrival they parked the car on the side of the road where defendants got out of the car, taking with them a maul and other tools to the post office.
At the time defendants were wearing gloves. They pried a side window open and entered the building. Fifteen minutes later defendants left the building carrying a money sack, a small round box containing coins, and the tools used in entering the building.
According to Caine's testimony, they then drove to Cal's Drive-In where he dropped them off. Once again defendants donned gloves and left the car with their tools. They pried open a side window and entered the building but left hurriedly when an *635 alarm system was triggered. They embarked with Caine again and proceeded to Beauboeuf's store a few blocks away.
For the third time, with gloves and tools, they ventured forth to burglarize another establishment. While they were at the store Caine noticed Calvin Hayes, Jr., pass by twice in his truck. Hayes was the owner of Cal's Drive-In, who had been alerted by the burglar alarm. Caine notified Wilson and he and Caine drove away. They were subsequently stopped by Deputy Juneau about 1:30 that morning and the gloves, tools, money sack and box of coins were found in the vehicle they occupied. Tennant and Clark were captured later in Baton Rouge.
From this version of what transpired the trial judge admitted evidence of the Deville Post Office burglary to show knowledge, system and intent.
Section 445 of Title 15 of the Revised Statutes permits the introduction of such testimony, in order to show intent by similar acts, independent of the act charged as a crime in the indictment. Section 446 permits testimony of such acts, conduct or declaration of the accused as tend to establish knowledge, intent or system when these elements form an essential part of the inquiry.
Simple burglary requires not only the intentional breaking and entering of a building but also the intent to commit a felony or theft therein. State v. Green, 205 La. 439, 17 So.2d 620 (1944). In all three of these burglaries the actions and methods were strikingly similar, all three occurring within minutes of each other. In the case of Cal's Drive-In, where no actual theft took place because of the burglar alarm, it was necessary for the State to establish by evidence that the defendants did intend to commit a theft there. This was done by showing an actual theft at the Deville Post Office minutes before involving the same actors using the same system with the same objective (money), the same automobile, the same burglary tools and the same gloves. Buildings in the same general area were entered each time, all three offenses being closely related in point of time, having been committed within less than 90 minutes. State v. Jones, 332 So.2d 466 (La. 1976); State v. Lawrence, 294 So.2d 476 (La.1974); State v. Roquemore, 292 So.2d 204 (La.1974).
There is no merit to this assignment.

Assignment 5
The defense relies upon the foregoing assignments of error to support its motion for a new trial. Since the assignments lack merit, no error was committed when the motion for a new trial was denied.
For the reasons assigned, the convictions and sentences are affirmed.
DIXON, J., concurs, disagreeing with the treatment of Assignments # 1 & 5 and Assignment # 4.