391 So.2d 429 (1980)
STATE of Louisiana
v.
John Norman KENT.
No. 67082.
Supreme Court of Louisiana.
November 10, 1980.
Concurring Opinion January 16, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-appellee.
*430 Clarles W. Moore, Moore & Walters, M. Michele Fournet, Baton Rouge, for defendant-appellant.
LEMMON, Justice.
This is an appeal from defendant's conviction of second degree murder and sentence to life imprisonment. Principal issues include admissibility of live witness testimony allegedly resulting from an illegal confession and/or illegal arrests, defendant's right to a closed hearing on his motion to suppress, and challenges for cause of jurors who conscientiously object to imposition of the death penalty.
Facts
On January 17, 1978 defendant, along with Michael Shepard and Donald Edwards, broke into a home at night, ransacked the house, stabbed the 78-year old female occupant to death, and fled with a box of coins. Tipped by confidential informants, the police focused their investigation on defendant, who was then 15 years old, and his two confederates. On the basis of the tip and of information from defendant's brother that three silver dollars recovered by police during the investigation had been won while gambling with defendant, the police picked up defendant for questioning. Defendant's subsequent confession implicated Shepard in the crime.
Shepard pleaded guilty to manslaughter, as part of an agreement with the district attorney, and then testified at defendant's trial, describing fully the events of the murder. According to Shepard's account, although Edwards planned the burglary, both Edwards and defendant participated in stabbing the victim to death in the bathroom of her house.
Admissibility of Shepard's Testimony
In questioning the admissibility of Shepard's testimony, defendant premises his first argument on the illegality of his own confession (which allegedly led to Shepard's arrest) asserting that the confession was taken in violation of the jurisprudential guidelines expounded by this court in State in the Interest of Dino, 359 So.2d 586 (La. 1978) and that the confession resulted from police exploitation of his own illegal arrest. Defendant contends that since police learned of Shepard's complicity through the illegal confession, Shepard's testimony should not have been admitted.
Defendant was taken into police custody several days after the murder. After being advised of his Miranda rights and being informed of the charges, defendant signed a "rights waiver" form and then made an inculpatory statement.[1] In the meantime police had contacted defendant's mother, and she appeared at the police station after defendant had signed the statement. Upon speaking with his mother, defendant decided to tell the whole truth and made a complete confession, revealing the details of Shepard's involvement in the murder.
Defendant's confession has previously been reviewed by this court on the prosecution's application for certiorari after the trial court had excluded the confession for all purposes, and we held that defendant's statements, freely and voluntarily given after full compliance with the Miranda warnings (although obtained without compliance with the jurisprudential guidelines set forth in the Dino decision), could not be used to prove his guilt, but could nevertheless be used to cross-examine him to impeach his credibility if he should testify. 371 So.2d 1319. See also Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The matter is now before us on appeal from defendant's conviction obtained without the use of his confession. (Defendant did not testify.)
Prior to the Dino decision Louisiana courts, in accordance with the prevailing view in the United States, employed a "totality of circumstances" test as a basis for deciding whether a person under the age of 17 had knowingly and intelligently waived his rights, the age of the accused being *431 merely one circumstance (although an important one) to be considered in determining admissibility.[2] The Dino decision stated that the confession of a juvenile is absolutely inadmissible unless the prosecution shows that the juvenile engaged in a meaningful consultation with an attorney or an informed parent, guardian, or other interested adult before waiving constitutional rights.[3]
In State v. Collum, 365 So.2d 1272 (La.1978), this court refused to accord retroactive effect to Dino's exclusionary rule and held admissible a confession that police officers had obtained prior to that decision in justifiable reliance on the totality of circumstances rule that had been repeatedly approved by this court.[4]
Because the statements in the present case were judicially determined to have been given voluntarily, and because the guidelines of Dino had not yet been promulgated at the time of the interrogation, we decline to exclude Shepard's testimony on the basis that the prosecution discovered the details of Shepard's complicity as a result of defendant's confession. Exclusion of the testimony on that basis would disserve the search for truth and would not materially advance the non-retroactively applied policies of the Dino decision.
In reaching this result, we are influenced by the approach adopted by the United States Supreme Court in Michigan v. Tucker, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), when confronted with a similar situation. In that case Tucker's confession, although freely and voluntarily given, was not preceded by Miranda warnings, because the confession was given prior to the Miranda decision. However, because Tucker's trial occurred after the Miranda decision was rendered, the confession itself was excluded under Johnson v. New Jersey, cited in footnote 4. The Court nevertheless held that a witness' testimony should not be excluded merely because the witness' identity was first revealed in a freely given confession where there was a good faith failure to comply with Miranda[5]. The Court distinguished a direct infringement upon the privilege against self-incrimination from a mere violation of the "prophylactic rule" adopted in Miranda in order to implement and enforce the privilege.
In the present case (as in Tucker) the officers conducting the interrogation were guided by and complied in good faith with previously enunciated principles. Thus, as the Court reasoned in Tucker, while exclusion of the confession itself might be appropriate, exclusion of other highly reliable evidence secured as a result of the voluntary confession is unnecessary to enforce compliance with judicial guidelines promulgated subsequent to the confession.[6]
Defendant next argues, as a basis for excluding Shepard's testimony, that his (defendant's) arrest, which resulted in the revelation of Shepard's identity and complicity, was not supported by probable cause, since the informants' tips were not shown to be credible or reliable. We reject this argument because even if defendant was illegally arrested, Shepard's testimony *432 at trial was sufficiently attenuated from any taint of that arrest.[7]
We are buttressed in this conclusion by the decision in United States v. Ceccolini, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). In the Ceccolini case the identity of a witness was discovered as a result of an illegal search, which involved a police officer's opening an envelope that contained gambling papers, and the witness testified against defendant three years later as an act of her own free will. The Court held that the witness' testimony was sufficiently attenuated from the initial conduct to warrant its admission, observing that "since the cost of excluding live-witness testimony often will be greater, a closer, more direct link between the illegality and that kind of testimony is required" than is required with inanimate evidence. 435 U.S. at 278, 98 S.Ct. at 1061. Although the Court refused to adopt a "per se rule that the testimony of a live witness need not be excluded at trial no matter how close and proximate the connection between it and a violation of the Fourth Amendment" (435 U.S. at 274, 98 S.Ct. at 1059), it is evident from the decision that the passage of time and the exercise of "free will" by the witness will often serve to dissipate or attenuate the taint.
In the present case we conclude, as the Court did in Ceccolini, that the cost of permanently silencing a witness, whose complicity is discovered as a result of police conduct violative of the Fourth Amendment, is frequently too great for the criminal justice system to bear merely because the testimony bears a "but for" relationship with the illegal conduct.[8] As the Court stated in Ceccolini:
"[T]he exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object."
Whether or not defendant's initial detention was illegal, the passage of an extensive period of time (18 months) between the arrest and trial testimony, along with the fact that Shepard made an independent and counselled decision to testify at defendant's trial, certainly attenuate his recitation under oath of the facts surrounding the murder from the arguably illegal police conduct. Although Shepard, as a putative defendant, occupied a status different from that of the third party witness in the Ceccolini case, Shepard's testimony could only be obtained as a result of a plea bargain, and that intervening bargain constituted the direct motivation for Shepard's decision to testify.
For similar reasons, Shepard's own arrest, even if illegally effected, would not require exclusion of his trial testimony against defendant.[9]
Therefore, the trial court did not err in allowing the jury to hear and weigh the testimony given by Shepard.
Right to a Closed Hearing on the Motion to Suppress
Defendant also urges this court to reverse his conviction because the trial court refused to grant him a closed hearing on his motion to suppress. In effect he *433 would have this court equate the discretion to grant a closed hearing on certain pretrial proceedings with a right assertable by the accused to demand a closed hearing. Although the United States Supreme Court recognized in Gannett v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), that the trial court may permit a defendant to waive his Sixth Amendment right to a public proceeding, there is no indication that there is a concomitant right to a closed proceeding.[10] Nevertheless, we need not decide in this case whether it is ever an abuse of discretion for the trial court to refuse to close a pretrial proceeding at the request of the accused. It is enough for resolution of the merits of defendant's contentions to hold that he has made no showing that he was prejudicially affected by the trial court's denial of his request. Furthermore, defendant has not shown that other methods of protecting himself from the adverse effects of pretrial publicity would not have adequately assured a fair trial.[11]
Challenges for Cause
Defendant finally contends that the trial court erred in granting the prosecution's challenge for cause of 23 prospective jurors who stated they could impartially decide guilt or innocence, but could not impose the death penalty.
C.Cr.P. art. 798 provides:
"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
* * * * * *
"(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes its unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt."
Defendant does not argue that the statute was not followed, but rather he urges that the exclusion of such jurors deprived him of a "cross-sectional community representation". In addition to the fact that there has been no showing in this case that such effects in fact flow from the prosecution's use of such legislatively granted challenges, we conclude that exclusion of such jurors does not violate the constitutional requirements of a representative cross-section of the community. See Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir. 1978).[12] *434 See also State v. Berry, 391 So.2d 406 (La.1980); State v. Williams, 392 So.2d 619 (La.1980); State v. Roberts, 331 So.2d 11 (La.1976), reversed on other grounds, 431 U.S. 633, 97 S.Ct. 1993, 53 L.Ed.2d 637 (1977).
Defendant has not established that either the federal or state constitution requires the Legislature to provide a scheme for capital cases whereby a jury is selected without such "Witherspoon " challenges to judge the guilt of the accused, to be followed by a second jury selected to decide the question of penalty.[13] This may be a fairer, albeit less efficient, scheme, but it is not constitutionally mandated and is not the procedure the Legislature has provided.
Accordingly, the conviction and sentence are affirmed.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
Because the guidelines set forth in State in the Interest of Dino, had not been promulgated at the time of Kent's interrogation, the admission of Shepard's testimony is correct according to the rule of State v. Collum, 365 So.2d 1272 (La.1978). I continue to believe, however, that the standards enunciated in Dino were designed to insure the integrity of the fact finding process and should be applied retroactively. See my dissenting opinions in State v. Collum, supra; State v. Kent, 371 So.2d 1319 (La.1979).
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See also La. Const. art. 1, § 13 (1974).
[2] See State v. Hills, 354 So.2d 186 (La.1977); State v. Hall, 350 So.2d 141 (La.1977).
[3] Justice Lemmon notes that this statement in Dino was not necessary to the decision holding the confession inadmissible and that nothing in the present decision should be taken to indicate his approval of the abrogation of the totality of circumstances test. See State in the Interest of Holifield, 319 So.2d 471 (La.App. 4th Cir. 1975).
[4] Dino, like Miranda, was thus limited to cases in which trial began after the effective date of the decision. Dino was decided on June 15, 1978. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).
[5] The Court reversed the decision of a lower court, which had ordered a new trial for Tucker.
[6] Shepard's testimony proved reliable when subjected to the testing process of an adversary trial. Indeed, it would be ridiculous to suggest that Shepard's testimony was unreliable because defendant was not afforded consultation with an attorney or adult prior to this voluntary confession.
[7] Here, defendant was detained following reports by informants and information given by his brother concerning his possession of some silver dollars. The silver dollars were recovered and were linked with the loot stolen during the burglary. Thus, there may have been probable cause for defendant's arrest. This need not be decided, however, because of our view that the live witness testimony of Shepard was sufficiently attenuated from any initial illegal conduct.
[8] Shepard's name had already been mentioned as a suspect by the informant. However, under the circumstances, we do not treat this as a matter of "inevitable discovery".
[9] Shepard's arrest was arguably lawful, especially when the information from defendant's voluntary confession (given without compliance with Dino's standards) is considered in support of probable cause for Shepard's arrest. That information was credible and reliable, being a firsthand account of Shepard's participation in the crime and a declaration by defendant against his penal interest.
[10] Compare Richmond Newspapers, Inc. v. Virginia, ___ U.S. ___, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980).
[11] The motion for a continuance and for a change of venue are both means of counteracting the possible adverse effects of pretrial publicity. See C.Cr.P. arts. 621 and 712. See also State v. Bell, 315 So.2d 307 (La.1975); State v. Bell, 346 So.2d 1090 (La.1977); State v. Felde, 382 So.2d 1384 (La.1980); State v. Montgomery, 248 La. 713, 181 So.2d 756 (1966).
[12] In Spinkellink, the court of appeals reasoned:

"Assuming for the moment that veniremen who are properly excluded under Witherspoon because they would automatically vote against the death penalty no matter what evidence was proved at trial constitute a `distinctive class,' we believe that Florida in the instant case has satisfactorily shown the `weightier reasons' required by the Supreme Court in Taylor for the exclusion of such veniremen. As we have already noted, Florida has reached the reasoned determination that the parties' right under the sixth and fourteenth amendments to an impartial jury and the state's interest in the just and even-handed application of its laws, including Florida's death penalty statute, are too fundamental to risk a defendant-prone jury from the inclusion of such veniremen. As the petitioner in his brief concedes, a defendant would be unjustified in objecting, for instance, to the exclusion for cause of a class composed of veniremen who are related to him, even if the veniremen stated they could impartially judge his guilt or innocence, because the chance that such veniremen would be biased in favor of the defendant is too great. Such danger is not less real when the excluded class is those veniremen properly struck under Witherspoon because of their conscientious scruples against capital punishment. The exclusion of such veniremen, therefore, does not violate the representative cross-section requirement of the Sixth and Fourteenth Amendments." (Citations and parenthetical material omitted.)
[13] Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Compare Adams v. Texas, 448 U.S. ___, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980).